Flemming *v.* Lawless.    ·

---

---

## SARA L. FLEMMING

### *v.*

## PETER LAWLESS et al.

[Filed November 18th, 1897.]

Defendant pleaded payments, alleging "for which he has vouchers ready to be produced and proved," whereupon complainant, ignorant of the existence of such vouchers, procured an order requiring defendant to produce "the receipts, vouchers and other evidence in writing of the payment" of the sums as set forth in the answer. Defendant produced a consolidated receipt, pur-

porting to be for four separate payments, covered by separate receipts, but did not produce a certain separate receipt that he then had.—*Held*, that he could not afterwards use the separate receipt as evidence, in view of the common-law Practice act (section 157), providing that a paper shall not be given in evidence where a party has refused to comply with the order to produce it.

Motion, on petition, to open a decree of foreclosure and sale.

*Mr. Halsey M. Barrett*, for the petitioner.

*Mr. Washington B. Williams, contra.*

PITNEY, V. C.

This is a motion, on behalf of the defendants, to open a final decree in this cause made on the 25th day of January, 1897, fixing the amount due—$5,507—upon the mortgage set out in the bill, and $1,558.85 for taxes on the mortgaged premises paid by complainant, and decreeing a sale to pay the same. From that decree an appeal was taken to the court of errors and appeals, and the cause was argued at the last June Term thereof. Before the decision thereof by that court, upon application of the defendants, the court sent the record. back to this court, in order to enable this court to deal with the application upon its merits.

The application, made by petition, is based upon the discovery by the defendant of a piece of documentary evidence, to wit, a receipt for a payment on account of the taxes, included in the decree, alleged to have been made to the complainant's agent by the defendant, and which receipt was not in the possession or control of the defendants when the cause was tried in this court.

The opening of a decree, fairly obtained after a hearing, in which both parties have been fully heard, is a matter resting in the discretion of the court, to be exercised with care and caution and in such manner as to promote justice.

Two things must, of course, be proven by the defendants in order to entitle them to the ear of the court—first, that the alleged receipt is genuine, and second, that it was not within their possession or control at the time of the hearing in this

court, and that such want of possession and control was without fault on their part.

Counsel for the complainant makes a preliminary objection to the granting of the petition, based in part upon the terms of the one hundred and fifty-seventh section of the common-law Practice act, and in part upon the misconduct of the defendants, and contends that the defendants are absolutely debarred by the terms of the last clause of said act from now offering said receipt in evidence, even if its genuineness were proven and it were also proven to the satisfaction of the court that it was not in their possession or control at the time of the hearing before this court; and as an additional and supporting ground, he contends that, without the aid of that act, the defendants are not entitled to the ear of the court because they have disobeyed an order of the court with respect to the very receipt in question, and are in contempt therefor.

The consideration of this question renders it necessary to recur to some of the facts and circumstances which preceded the hearing in this cause.

The bill alleges that the owner of the mortgaged premises failed to pay the taxes, water rents and other municipal charges levied by the city of Jersey City upon the premises, and permitted them to fall in arrear to a large amount; that the arrears were finally adjusted by a commission under what is called the Martin act, and that the complainant, as mortgagee, was obliged to pay several large sums for the taxes so adjusted, in order to save the premises from being sold, for which she claims a first lien upon the premises. The amount so paid was alleged in the bill to be $3,272.70 in three separate payments, in the months of April and May, 1890, and the further sum of $1,512.56 on the 13th of October, 1891, making in all $4,785.26.

The defendant Lawless set up in his answer that the complainant had received the sum of $1,200 from one Vorrath in payment of a part of the mortgaged premises conveyed by the defendant and released by the complainant, and that that sum should be applied either to the mortgage or arrears of taxes,

without indicating which.   That payment of $1,200 was admitted by the complainant at the hearing.

The defendant Lawless set up further payments especially on account of the taxes, as follows:

"The defendant Peter Lawless admits the payment of three thousand two hundred and seventy-two dollars and seventy cents for taxes, water rents and other municipal charges by Jersey City, as set forth in said bill, as having been made by the complainant [ignoring the alleged payment of $1,512.56, October 13th, 1891], but avers and insists that he paid and reimbursed said complainant for such payment made by her, and paid *in excess of said sum* to her or her attorney, James Flemming, now deceased, for said taxes, water rents and municipal charges the sum of three thousand two hundred and twelve dollars and thirty cents, *for which he has vouchers ready to be produced and proved*   The said defendant Peter Lawless admits that there is due on the mortgage of the said complainant the sum of nine hundred and forty-nine dollars and fifty cents, without interest, which interest is to be added and which sum he is ready to pay to the complainant in satisfaction of her said mortgage."

It thus appears that Lawless, in his answer, alleged payments on account of taxes, &c., of $3,272.70, plus $3,212.30, making $6,485.

On the 23d of November, 1895, and before the cause had been referred for trial, the complainant presented her petition to the chancellor, setting out a brief *résumé* of the proceedings, and then follows this allegation:

"That in the answer of Peter Lawless, Julia Rathe and Catherine O'Neill, the said defendants allege that they paid to James Flemming certain sums of money for taxes and on the mortgage in question, and that there is now due on said mortgage and taxes the sum of nine hundred and forty-nine dollars and fifty cents, with interest, and that they have certain receipts, vouchers and other evidences in writing of the payment of the said sums; that she is ignorant of any such receipts for the amounts above set forth."

The petition further alleges that the petitioner had requested the defendants to permit her to inspect and examine any receipts or other evidences in writing of such payments, but that the defendants had refused.   It prayed that an order might be made directing the defendants "to produce *the said receipts*, vouchers or other evidences in writing of the payments" of the

said sums of money and leave the same for inspection and examination in such a manner as the court might think fit.

Upon that petition an order was made on the 2d of December, 1895, reciting the petition and directing

"that said defendants do, within five days from the date of service upon them of a copy of this order, which need not be certified, produce receipts, vouchers or other evidences in writing for all the payments claimed to have been made in their answer, on the mortgage in question, and also *the receipts, vouchers and other evidence in writing of the payment by them or any of them to James Flemming of three thousand two hundred and seventy-two dollars and seventy cents, and the sum of three thousand two hundred and twelve dollars and thirty cents,* as set forth in said answer, and leave them with Isaac Romaine, Esquire, one of the masters of this court, for the space of ten days, subject to the examination of said petitioner."

This order was served upon the defendants' solicitors on the 7th of December, 1895. At that time the defendant Lawless alleges and now admits that he had in his possession, or in that of his counsel, a Mr. O'Sullivan, of New York, four separate receipts (one of which is the one lately discovered and is the foundation of the present petition), purporting to be signed by James Flemming, the deceased husband of the complainant, for four several payments on account of moneys paid by the complainant for arrears of taxes on the mortgaged premises, which receipts were known and called at the hearing of the cause the "separate" receipts; and also, in addition to those papers, a single paper purporting to be signed by Mr. Flemming, which was a consolidated receipt, purporting to be for the four separate payments covered by the separate receipts, stating them all in detail, with their dates, which consolidated receipt was known at the hearing as the *omnibus* or "suspect."

On the 11th of December, 1895, the defendant, by his solicitors, in obedience to the order of December 2d, deposited with Master Romaine this consolidated receipt or "suspect," but withheld from such deposit the four separate receipts. At that time, however, the solicitors of the defendants were aware of the alleged existence of the four separate receipts.

In the latter part of December the complainant presented another petition to the chancellor, in which she set forth that in

pursuance of the order of December 2d the defendant had deposited with Master Romaine the consolidated receipt, and that the petitioner's solicitors had examined it and were not satisfied with the authenticity of the signature and desired to have the same photographed and examined by an expert in penmanship. The petition set out that the petitioner had requested the defendants' solicitors to consent to have the same photographed and that they had not granted the request, and prayed that the petitioner be permitted to have the document photographed and that the paper itself be impounded and left in the possession of the master.

On the filing of that petition an order was made on the 23d of December on the defendants to show cause why the prayer of the petition should not be granted. This petition and order to show cause were served upon the defendants' solicitors, and on the return-day, to wit, the 30th of December, 1895, the chancellor made an order (which was served on defendants' solicitors on the next day) that the receipt be impounded in the hands of the master till the further order of the court and complainant be permitted to cause the same to be photographed.

Shortly after this, and early in January, 1896, Mr. O'Sullivan brought the four " separate receipts " to the office of the solicitors of defendants, and had a consultation with them as to whether those as well as the consolidated receipt should not be delivered to the master. The solicitors of the defendants advised and urged the lodging of the separate receipts in the hands of the master and Mr. O'Sullivan opposed it. They went together to the master's office with the receipts in their hands, and after talking together Mr. O'Sullivan declined to leave the receipts with the master, saying he would hold them to be used as a reserve to surprise the complainant, and took them with him to New York. He swears that he subsequently changed his mind and started with the receipts to Jersey City, for the purpose of lodging them with the master, and lost them under the circumstances stated in the opinion heretofore filed in this cause.

At the hearing the defendants called upon the complainant to produce all papers, writings and books of account, checks,

check-stubs, &c., in her possession belonging to James Flemming, the deceased husband of the complainant, which might bear upon the questions involved, and in pursuance thereof the complainant did produce all such papers, and from them it abundantly appeared that two of the payments claimed in the four separate receipts and mentioned in the consolidated receipt, viz., the first and fourth payments, were actually made to Mr. Flemming. The receipt by Mr. Flemming of these two payments was shown by entries of the amounts on the obverse side of the stubs in his check-books, and by entries in his bank passbook; also by copies of the corresponding receipts, to wit, the first and fourth receipts, found among his papers, and such payments were promptly admitted by the complainant.

This confined the dispute at the hearing to two payments claimed by the defendant, to wit, one of May 6th, 1890, for $1,685, and the other of September 15th, 1891, for $2,600. The proof of these payments rested upon the " suspect " receipt, and the direct evidence of payment in the testimony of Peter Lawless. The opinion of the court upon this evidence was that the " suspect " was, in effect, a forged receipt, and that the evidence of Mr. Lawless was not reliable. *36 Atl. Rep. 502.*

The petition of the defendant now under consideration states that in the month of September last, after the argument of the appeal, one of the two receipts which cover the disputed payments, to wit, that of September 15th, 1891, for $2,600, was received by the solicitors of the defendants by mail, enclosed in an envelope with an anonymous letter, and the application is to open the decree and be permitted to prove this receipt, which, as we have seen, is one of the four receipts which were in defendants' possession at the time the " suspect " was lodged with the master.

The ground now taken by the complainant is the same as that urged in the court below against the receipt of secondary evidence of the contents of these receipts, and is twofold, viz., that the defendants having been ordered by the chancellor to deliver the receipt in question to Mr. Romaine when it was in their possession, and, having refused to do so, are in contempt

Flemming *v.* Lawless.

of the court in that respect, and cannot now be heard to ask to be relieved from the decree of January 25th, 1897, in order to be permitted to put the paper in evidence, and, further, are now debarred by the act of the legislature, before referred to, from offering the same in evidence. The language of the act is: " The court may order either party to give to the other, within a specified time and under such terms as may be imposed, an inspection and copy, or permission to take a copy of any books, papers or documents in his possession or under his control containing evidence relating to the merits of the action or proceeding, or of the defence thereto, and if compliance with the order be refused, such books, papers or documents shall not be given in evidence in such action or proceeding, and the court may punish the party so refusing as for a contempt of the court."

No question is or can be raised but that the act in question applies to the court of chancery. The language of that and the following section clearly shows that it does apply to the court of chancery.

The power of the court to make the order of December 2d, 1895, and the propriety of making it in this case, and that it was made in due course of practice, was not and indeed cannot be questioned. Such power was a part of the original jurisdiction of the court. *2 Dan. Ch. Pr. 1817; Hare Disc. 239 et seq.* §§ *7, 8; 2 Madd. Ch. Pr. 391, 392; Gresl. Eq. Ev. 26 et seq.*, where it is shown that wherever a defendant in his answer makes profert of documents it is a matter of course for the complainant to have an order on the defendant to produce the same for inspection by complainant, and if defendant shall fail so to do he will be in contempt of the court and debarred from making any further motion in the cause.

The doctrine was applied in *Apthorpe* v. *Comstock, 1 Hopk. 143*, where the bill prayed an injunction against an action of ejectment based upon a deed which complainant alleged to be forged, or fraudulent, or otherwise invalid ; and a motion was made that the deed might be deposited with an officer of the court for the inspection of the complainant, his witnesses, &c. An elaborate examination of the authorities was had, and the

10

motion to deposit the deed for inspection was granted, and a motion to dissolve the injunction restraining the action at law was refused, and both orders were affirmed on appeal. *8 Cowen 386.*

And in this court Vice-Chancellor Van Fleet, in *Brown* v. *Farley, 11 Stew. Eq. 186*—a suit for partition—ordered the production by the defendant for inspection by the complainant of a deed under which the defendant claimed title to the whole of the premises, and on failure to obey the order, debarred defendant, by an order, from offering the same in evidence on the trial of a feigned issue to determine the title.

The power was also declared to be inherent in a court of law by the supreme court in *Hilyard* v. *Township of Harrison, 8 Vr. 170* (at *p. 173*).

It will thus be seen that the statute in question is a mere declaration of a power which already existed in the court, and, in addition, provided a peremptory penalty for disobedience, which the court might or might not have enforced in a particular case without the mandate of the statute, viz., debarring a party who had disobeyed the order from offering the evidence which he had refused to produce at the time and place designated by the court.

It is to be here observed that the defendant by his answer makes profert of the vouchers in question, using this language, " for which he has vouchers ready to be produced and proved." I understand the rule to be that a party who makes such profert must produce the documents at such time and place as the court shall direct. He cannot choose his own time and place.

Upon this state of the law and the facts, the single question is whether or not the order to produce herein, included the voucher here in question. It is to be observed that the complainant was, *prima facie*, without knowledge of these papers. They do not purport to be signed by her, but by her agent, who was dead. There is no proof or reason to suppose that she ever saw the voucher here in question, or any copy of it, or had any reason to believe that it was in existence. No description of the vouchers was given in the answer, so that she was entirely

in the dark as to their description. She was not only unable to describe them, but there was no occasion for her to attempt to describe them in her petition.

It is to be observed that the petition of complainant set out the allegation of the answer that the defendants have in their possession "certain receipts, vouchers and other evidences in writing of the payment of the said sums" and that the petitioner is ignorant of them. And it further appears that it was proven on the trial that the petitioner's solicitor had applied to the solicitors of the defendants for the inspection of these papers before this petition was presented, and had been refused such inspection. The prayer of the petition is "to produce *the said receipts*, vouchers or other evidences in writing of the payments of the sum of $3,272.70 and the sum of $3,212.30," as set up in the answer. The order is, first, generally, to "produce receipts, vouchers or other evidences in writing for all the payments claimed to have been made in their answer on the mortgage," and "also *the* receipts, vouchers and other evidences in writing of the payment by them or any of them to James Flemming of the sum of $3,272.70 and the sum of $3,212.30, as set forth in said answer." It was, in effect, this, You say in your answer that you have vouchers to prove the payment of two certain sums of money to James Flemming ; now you are ordered to produce those vouchers. There can be no doubt, then, that the order was to produce *the very* vouchers which the defendant in his answer said he had in his possession ready to be produced and proved. And the effect of it, in my judgment, was plainly the same as if the order had read "*all* the receipts, vouchers and other evidences in writing." I am unable to adopt the ingenious argument of the learned counsel of the defendant that the order was only to produce receipts and vouchers generally, and not *all* the receipts and vouchers. For reasons just stated, I hold the contrary. There can be no doubt that the receipt now proposed to be offered and proven was one of those covered by the order. That being so, it follows that there was a distinct and direct refusal to obey the order of the court of December 2d. Moreover, it was a refusal which it was impossible for the petitioner to deal

with at the time by punitive proceedings. As I have observed, she had no knowledge of the existence of the other individual receipts. She did not know how many receipts the defendants had. It was, indeed, testified by the defendants that they were shown to Mr. Romaine on the occasion when the discussion occurred in his presence as to the propriety of lodging them with him. But Mr. Romaine swears that he did not see them. He certainly was furnished with no description or copy of them, and the interview was in the absence of the complainant's solicitor and without notice to him, and it does not appear that Mr. Romaine informed complainant's solicitor of the occurrence. This leaves the complainant entirely blameless for not proceeding and obtaining, as was done in *Farley's Case,* an adjudication of contempt for disobeying the order of the court. She was fully justified in proceeding to prepare her case to meet the alleged payments upon the basis that the consolidated or suspected receipt was the only voucher the defendants had for these alleged payments. She did proceed in that respect, at great expense, and succeeded.

It seems to me, for these reasons, that the case is brought directly within not only the letter but the equity and spirit of the statute, and that the decree should not be opened and defendant permitted to produce and offer proof in support of the genuineness of the receipt, and that, in the absence of the statutory prohibition, the court ought, in the exercise of a sound discretion, to refuse to open the decree.

In the *Farley Case* the defendant was prohibited by the order of this court from offering the deed in evidence before the trial judge and jury on the trial of the feigned issue, and was therefore defeated. He was afterwards indicted for forgery and acquitted, and then applied to the court for an order vacating the order adjudging him guilty of contempt of court and dissolving the injunction against the production of the deed, also directing the setting aside of the verdict on the feigned issue, and directing a new trial of the issue; and his application was denied simply on the ground of his disobedience of the order of production.

The only difference between *Farley's Case* and this is that in

*Farley's Case* there was a direct adjudication of contempt and a direct order that he should be debarred from offering the deed in evidence on the trial of the issue. This last order was necessary, because the trial of the cause was before a judge of a different court. But I apprehend that if the hearing of the cause on the merits had been in this court, before the same judge who made the order to produce and deposit the deed, he would have been at liberty to exclude evidence, either original or secondary, of the deed without any adjudication of contempt.

For these reasons I shall advise that the prayer of the petition of the defendant herein be denied, and the petition be dismissed with costs.